150

## ALLEN–BRADLEY CO. v. ERIE RESISTOR CORPORATION.
### No. 6822.

### Circuit Court of Appeals, Third Circuit.
### May 5, 1939.

Thomas G. Haight, of Jersey City, N. J., Louis Quarles and David A. Fox, both of Milwaukee, Wis., and Harold W. Hawkins, of Pittsburgh, Pa., for appellant.

Hugh C. Lord, of Erie, Pa., for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

BIGGS, Circuit Judge.

The appellant, Allen-Bradley Company, brought its bill of complaint in the court below alleging that the appellee, Erie Resistor Corporation, had infringed United States Patent No. 1,927,185 issued upon September 19, 1933, upon an application filed by Laurence E. Power and Lynde Bradley, filed in the Patent Office upon March 28, 1930. The court below found claims 4 to 8, inclusive, of the patent not to be infringed by the appellee's process and found claims 9 and 10 invalid for want of definiteness and entered a decree to such effect. The appellant appeals from only so much of the decree as affects claims 4, 7, 8, 9 and 10 of the patent.

The specification of the patent states:

"This invention relates to certain new and useful improvements in electrical resistors and refers more particularly to molded fixed resistors and the method of making the same.

"Heretofore, fixed resistor units have been molded of two general types of compound, one comprising a mixture of phenol resin, asbestos fiber, and graphite, and the other a mixture of phenol resin, asbestos fiber, and carbon black."

The patent then goes on to state that each type of compound had certain disadvantages as well as certain advantages. The use of graphite gave " * * * a desirably low positive temperature co-efficient of resistance, but units made of this mixture were noisy in radio apparatus and also had marked voltage characteristics particularly in the higher resistance values." By the phrase, "a desirably low positive temperature co-efficient of resistance", Power and Bradley meant that as the temperature increased in the compound containing graphite the resistance of the resistors to a flow of electric current also increased or at least remained stationary, but that resistors of 50,000 ohms and upwards containing graphite possessed characteristics which rendered them excessively noisy and also caused them to shift in accuracy to such a degree as to render them undesirable for use when subjected to heavy currents.

In respect to the compounds containing carbon black, Power and Bradley state in the patent specification that while such mixtures did not possess the unfavorable characteristic of excessive noise when used with heavy currents none the less resistors containing carbon black mixtures gave difficulties in calibration and possessed an undesirable " * * * high negative temperature co-efficient * * * ". This means that as the temperature of the resistor was

increased by the current passing through it, the resistance of the resistor also decreased permitting too great a flow of current.

Power and Bradley then state as the object of their invention the creation of a molded resistor, and a method of making it, combining the advantages of graphite and carbon black respectively without the disadvantages arising from the use of either substance; in short, the creation of resistors possessing as desirable characteristics the low positive temperature coefficient necessary in order that excessive current will not be passed through the unit upon its becoming hot and also possessing the desirable characteristic of quietness when used with a heavy current as in a radio apparatus connected with the ordinary electric circuit.

Power and Bradley state in their specification that they obtain this desirable result by making resistors of a compound of phenol resin, asbestos fiber and carbon black, the latter ingredient having been heated "to graphitizing temperatures." The patent specification also states, "The heating or calcining at extremely high temperatures decreases the expansion coefficient of the carbon black to that of graphite even though carbon black cannot be changed into graphite by any amount of heat so far as is known."

If we correctly apprehend the effect of calcining carbon black, taught in that portion of the specification just quoted, it is that the heating of the carbon black in a furnace prior to mixing it with the filler puts the carbon black in such a physical state that when the particles are heated by the current passing through the resistor, the particles of carbon black will expand but little, therefore not over-lapping and creating an improved contact for the passage of the current. Thus the efficiency of the resistor is increased. The foregoing is the gist of the disclosure taught by the patent, and if there be invention shown by the patent it is embraced in this disclosure.

Passing by any questions presented by the prior art and assuming that this disclosure of the patent does in fact constitute invention, we must now ascertain if Power and Bradley have claimed it in the claims of the patent.

The first three claims in issue, claims 4, 7 and 8,[1] claim resistors, or a method of manufacturing resistors, containing carbon black calcined substantially to graphitizing temperature. The employment of carbon black calcined as indicated is the gist of these claims. What does the phrase "graphitizing temperatures" as used in these claims mean? Is this phrase sufficiently definite in its nature to sustain the patent? Finally, assuming the claims to be sufficiently definite in their terms to be valid, does the appellee's process infringe them or any of them?

The specification of the original application filed by Power and Bradley refers simply to heating carbon black to graphitizing temperatures and to heating or calcining graphite to extremely high temperatures because this serves to decrease the expansion co-efficient of the carbon black. Later, the word "substantially" was inserted in certain of the original claims. At a later point in the file appears the statement that the carbon black should be calcined " * * * not merely to ordinary temperatures, *but to substantially graphitizing temperature at least 1927° Centigrade.*" Later still, appears the admission by the applicants that "graphitizing temperatures are in the neighborhood of 2200° Centigrade."

We think it is unnecessary in this opinion to narrate the various steps taken by Patent Office examiners whereby these changes were forced into the specifications of Power and Bradley, or to cite here the patents cited by the Patent Office as a result of which the applicants were in effect compelled to take the position that the calcining temperatures to which they referred were very high ones, practically graphitizing temperatures of the order of 2200°

---

[1] The claims referred to are as follows:

"4. In an electrical resistor, an electrical conducting material comprising carbon black calcined at substantially graphitizing temperatures."

"7. As an article of manufacture, an electrical resistor unit having as ingredients thereof, a non-conducting material serving as a filler, a suitable material affording a binder, and carbon black calcined to substantially graphitizing temperature.

"8. The herein described method of making electrical resistors which have carbon black as the conductor, including as a vital step thereof, fixing the temperature coefficient of expansion of the carbon black by calcining the same to substantially graphitizing temperature."

centigrade, and certainly temperatures of not less than 1927° centigrade. As a matter of fact at one portion of the file wrapper, the applicants state, "The primary feature of applicants' invention is thus the calcining of carbon black to at least 1927° Centigrade." The effect of these declarations in the Patent Office is to bind the phrase "to substantially graphitizing temperatures" as used in the patent to a meaning which would not include temperatures of less than 1927° centigrade. The appellant is now estopped from asserting that the meaning of the phrase would include substantially lower temperatures than those we have indicated. Smith v. Magic City Kennel Club, 282 U.S. 784, 789, 51 S. Ct. 291, 75 L.Ed. 707; Elevator Supplies Co. v. Graham & Norton Co., 3 Cir., 44 F. 2d 358, 359; Ideal Roller & Mfg. Co. v. Sutherland Paper Co., 6 Cir., 96 F.2d 675, 678; Tschappat v. Hinderliter Tool Co., 10 Cir., 98 F.2d 994, 998.

Moreover, we think that the evidence abundantly supports the contention of the appellee that the phrase "graphitizing temperature" at the time of the filing of the application meant temperatures of about 2200° centigrade. Well qualified witnesses asserted this and it appears to be a fact.

■ The District Judge found as a fact and upon ample evidence that the appellee conducted its calcining process of carbon black at temperatures not over 1100° centigrade.

The appellant therefore is caught between the horns of a dilemma. If the phrase "to substantially graphitizing temperatures" as used in the claims be construed to mean what we think Power and Bradley must have intended it to mean, viz., calcining temperatures of not less than 1927° centigrade, we must also hold that the appellee's processes do not infringe the three claims now under discussion. If, upon the other hand, we do not so interpret the phrase referred to in the claims in question, there is no doubt that the claims are invalid for want of definiteness. Fried Krupp Aktien-Gesellschaft v. Midvale Steel Company, 3 Cir., 191 F. 588; Hale Mfg. Company v. Hafleigh & Co., 3 Cir., 52 F.2d 714; Texas Company v. Sinclair Refining Company, 2 Cir., 87 F.2d 690; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 371, 58 S.Ct. 899, 82 L. Ed. 1402, 1407; Elliott Company v. H. S. B. W.-Cochrane Corporation, D. C., 26 F. 2d 815. So regarding, and without passing upon the validity of the disclosures of the patent over the prior art, we concur in the ruling of the District Judge that claims 4, 7 and 8 of the patent are not infringed by the appellee's processes.

■ As to claims 9 and 10,[2] we conclude as did the court below that these claims are invalid for want of definiteness. Each of the claims refers to the use of carbon black calcined in its "free finely divided" state or form. No reference is made to the temperature at which the calcining shall take place. The evidence in the case at bar makes plain that carbon black is among the most finely divided of all the solid materials handled in commerce. It is said to range in size downward from 1500 Angstrom units and that it would take 250,000 or more of the particles placed edge to edge to cover a line an inch in length. No reference is made in the patent specification as to how this incredibly minute material in its free undivided form is to be prepared for use or in fact as to how it is to be used. Indeed nothing whatever is said in the patent specifications in respect to carbon black in its free finely divided state or form. This phrase as used in claims 9 and 10 in our opinion is meaningless and renders the claims themselves meaningless as well.

The decree of the court below is affirmed.

[2] Claims 9 and 10 are as follows:

"9. The process of making a resistor which consists in calcining carbon black in its free finely divided state, mixing the calcined carbon black with inert insulating material and a binder forming a desired shape therefrom and baking to set the binder.

"10. An electrical resistor consisting of an inert insulating material intimately bonded together with carbon black particles calcined in the free finely divided form."