## STANDARD BRANDS, INC., *v.* NATIONAL GRAIN YEAST CORP.

No. 9.   Argued October 12, 1939.—Decided November 6, 1939.

*Mr. Leonard A. Watson,* with whom *Mr. Clair V. Johnson* was on the brief, for petitioner.

*Mr. Stephen H. Philbin* for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The order which granted this Writ limits our consideration to the validity of Hayduck patents Nos. 1,449,103, 1,449,105, 1,449,106. They relate to processes for manu-

facturing baker's yeast and are owned by the petitioner. It will be convenient to designate them by the last three figures of their office numbers—103, 105, 106.

All three patents were declared invalid by the Circuit Court of Appeals below, 101 F. 2d 814. In the District Court for New Jersey, 103 had been adjudged valid; 105 and 106 invalid, 21 F. Supp. 46.

The District Court for Maryland in two causes, (Soper, J.), held the patents valid, *Fleischman Yeast Co.* v. *Federal Yeast Corp.*, 8 F. 2d 186, *Standard Brands, Inc.* v. *Federal Yeast Corp.*, 38 F. 2d 329. The Circuit Court of Appeals, Fourth Circuit, affirmed the judgment sustaining 103, *Federal Yeast Corp.* v. *Fleischmann Co.*, 13 F. 2d 570. The parties arrived at a settlement and no appeal was taken from the second judgment.

Much has been written relative to these patents in the carefully prepared opinions referred to above. They adequately reveal the facts and points of law incident to the prolonged disputation. Irreconcilable views have been approved and we must now decide which is to be preferred.

"Yeast is a small cellular micro-organism. In its ordinary significance, it is a conglomerate mass of infinitesimally small cells. It multiplies by self propagation, limited by the means of subsistence, and the quality and yield are greatly affected by the conditions under which propagation is carried on. Yeast has been manufactured for at least 50 years by inoculating a wort; that is, by preparing a clear liquid solution and stocking it with a small amount of seed yeast. Such worts include substances to nourish the yeast cells, and are called yeast nutrient solutions. . . . The field for investigation and improvement has been the composition of the nutrient solution, and the character of the process employed during the period of growth."

Nutrient solutions often contain inorganic salts which are broken down through the growth of the seed yeast. Commonly, this brings about marked acidity. Growth progresses best in a slightly acid wort; over-acidity retards or destroys it; aeration of the wort accelerates growth.

The amount of alcohol consequent upon the growth of yeast cells has direct relation to the concentration of the wort. When intensified the yield of alcohol increases; when lowered there is less.

Generally: Patent 103 proposes to neutralize any deleterious acidity in a wort which contains inorganic salt by adding an antacid material; patent 105 requires the addition of nutrients during the growth of the yeast "at a rate such that the yeast may propagate and substantially all of the alcohol which may be formed is assimilated by the yeast"; patent 106 combines the neutralization idea of 103 with the rate of feed proposed by 105.

Claim No. 1 of patent 103, typical of all, follows—

"The process of manufacturing yeast which comprises preparing a yeast nutrient solution and propagating yeast therein with aeration, said yeast nutrient solution containing essentially sugar material and yeast nourishing inorganic salts from which components are liberated which tend increasingly to acidify the nutrient solution during propagation, and during the period of propagation neutralizing the deleterious excess of such acidity."

In respect of this petitioner's counsel maintain—

"It covers, rather, the integral coordination of propagating yeast with aeration in a prepared solution containing essentially sugar material and yeast nourishing inorganic salts from which results an increasing acidification tending to become deleterious, and neutralizing the *deleterious excess* of such acidity in the solution while the yeast propagation is being conducted."

The Circuit Court of Appeals below declared—

"We think that it cannot be denied that the use of antacid or basic materials as neutralizers for acidity in respect to yeast is old in the art. . . . We think that Hayduck has simply set forth a technique which is useful in the manufacture of yeast under modern methods. Hayduck's disclosures do not attain to the dignity of invention. His process is the result of the exercise of the skill of the calling, the application of an old principle to a similar or analogous subject with no change in the manner of application and without any substantially different result."

And it accordingly held patent 103 invalid for want of invention over the prior art.

Considering all the circumstances and notwithstanding the very forceful arguments to the contrary, we think this must be accepted as the better view.

Claim No. 10, typical of patent 105, follows—

"A process of propagating yeast with a relatively low yield of alcohol which comprises, preparing a wort containing all essential yeast nutrients in solution, initiating propagation of yeast in a highly diluted portion of said wort, aerating the diluted portion, and substantially continuously adding during the period of propagation, the wort of higher concentration at a rate such that the concentration of the dilute wort remains substantially constant, whereby substantially all of the alcohol which may be formed is assimilated."

Of this patent counsel for petitioner say—

It "is directed particularly to this procedural or manipulative, rather than chemical, aspect of the operation; i. e., a division of the wort into two parts with propagation begun in a diluted fraction and the gradual feeding in of the concentrated reserve as stated. By adopting this perfected process, the yield of yeast was still further

increased and there were also other accompanying advantages in shortened time from commencement of the yeast propagation to the harvesting of the yeast crop and in enhanced quantity of output from a given sized apparatus."

The Circuit Court of Appeals below declared—

"It was well known to the prior art that if the creation of alcohol was not desired the nutrient solution should contain a low concentration of sugar. . . . In our opinion the process described by Hayduck may constitute a mechanical improvement over the prior art but it is no more than this. But even if the process disclosed by Hayduck be held to constitute invention, the patent is invalid for indefiniteness as was held by the learned District Judge. Both the times and manner in which the concentrated nutrient solution is to be added may be ascertained as we have stated solely by experimentation. The disclosure of the patent is therefore too vague and indefinite to constitute invention."

With this conclusion we agree.

As to patent 106 counsel have stipulated—

"The process of this patent is one combining the process of patent '103, including neutralization, and the process of patent '105, including regulated nutrient feed."

Since patent No. 103 is invalid for lack of invention and No. 105 invalid because the disclosure is too vague and indefinite, a claim for patent based upon the mere union of the two processes described therein cannot be sustained where, as here, the proposed combination requires nothing beyond the skill of the art.

The challenged decree must be

*Affirmed.*

MR. JUSTICE BUTLER and MR. JUSTICE STONE took no part in the consideration and decision of this cause.