John H. EMERSON et al., Plaintiffs, Appellants,

v.

NATIONAL CYLINDER GAS COMPANY et al., Defendants, Appellees.

NATIONAL CYLINDER GAS COMPANY et al., Defendants, Appellants,

v.

John H. EMERSON et al., Plaintiffs, Appellees.

NATIONAL CYLINDER GAS COMPANY, Defendant, Appellant,

v.

John H. EMERSON et al., Plaintiffs, Appellees.

Nos. 5233–5235.

United States Court of Appeals First Circuit.

Jan. 15, 1958.

Robert L. Thompson, Boston, Mass., with whom Sewall P. Bronstein and Dike, Thompson, Sanborn & Bronstein, Boston, Mass., were on brief, for John H. Emerson et al.

M. Hudson Rathburn, Chicago, Ill., with whom Herbert P. Kenway, Kenway, Jenney, Witter & Hildreth, Boston, Mass., Richard D. Mason and Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., were on brief, for National Cylinder Gas Co. et al.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

We have before us three appeals from a decision of the United States District Court for the District of Massachusetts in two patent infringement actions which were consolidated for trial. Plaintiff appeals in No. 5233 from the decision holding Claims 3 and 4 of Patent No. 2,268,172 and Claim 9 of Patent No. 2,468,741 owned by him to be invalid for lack of invention. Two cross appeals were filed by the defendants. No. 5235 concerned the district court's denial of full costs and its denial of National Cylinder Gas Company's counterclaim for a declaratory judgment as to the validity of Claims 1 and 2 of Patent No. 2,268,172 which were not alleged by the plaintiff to be infringed by the defendants' structure and were not disposed of by the district court in its decision. No. 5234 concerned the denial of full costs to the defendants in the action brought on Claim 9 of Patent No. 2,468,741.

Both of these patents relate to certain improvements in resuscitators, which are devices used to artificially promote breathing in persons whose muscles for some reason or another are unable to create the positive and negative pressure in the lungs necessary for the exhalation and inhalation of air.

The plaintiff's first patent, No. 2,268,172 was issued to its employee, George J. Sinnett, on December 30, 1941, and will be hereinafter referred to as the Sinnett patent. The district court held that it was a combination of old elements from two previous inventions which in itself was not inventive. These two inventions were the Drager resuscitator or pulmotor, as it was commonly known, as claimed in Patent No. 1,044,031 and Patent No. 1,049,346 issued in 1912 and 1913 respectively, and the Erickson re-

suscitator as claimed in Patent No. 1,-893,670 and Patent No. 2,138,845 issued in 1933 and 1938 respectively. The district court further held that the contribution of Sinnett to the improvement of the resuscitator art involved nothing more than ordinary mechanical ingenuity. In this appeal it is necessary to determine whether this finding is clearly erroneous. Fed.R.Civ.P. 52(a), 28 U.S.C. Red Devil Tools v. Hyde Mfg. Co., 1 Cir., 1951, 193 F.2d 491.

The Drager pulmotor appears to be the basic invention in this field of positive and negative pressure intrapulmonary resuscitators despite its condemnation by the American Medical Association in 1921 and its subsequent disappearance from the American market. In this device oxygen under pressure is fed through a venturi. A venturi is a simple device having a nozzle and a chamber, and when gas under pressure passes through the nozzle it creates a vacuum in the chamber. In the Drager pulmotor the chamber is open to the outside atmosphere during the inhalation circuit (i. e. when oxygen and air are being forced into the lungs) and this outside air is sucked into the chamber and it along with the oxygen under pressure flows in a conduit or tube to a mask and then to the lungs. There must be some means to cut off this flow of gas to the lungs in order to prevent their rupture through excessive pressure and also draw out the stale air from the lungs in order to make room for fresh oxygen and air. In the Drager pulmotor a second tube is connected to the mask. The other end of this second tube is connected to a bellows. When the pressure inside the lungs and therefore also inside this tube and bellows reaches a certain point the bellows will expand causing a mechanism to shut off the first tube or conduit supplying the oxygen and air to the lungs. This mechanism will also cause the venturi chamber which during the inhalation circuit was open to the outside air, to be closed to the outside atmosphere and to be open now only to an extension of the second tube from the mask to the bellows. The vacuum thus created in the venturi chamber by the oxygen under pressure will thus cause the stale air to be sucked from the lungs and bellows. This combination of stale air and fresh oxygen cannot pass to the lungs because the first or inhalation tube is now blocked, but it will escape to the atmosphere through an outlet between the venturi chamber and that part of the inhalation tube blocked off from the mask and lungs, this outlet having been opened by the expansion of the bellows mechanism. When sufficient air is withdrawn from the lungs and the bellows, the bellows will contract causing the mechanism to reverse the operation it performed upon expansion, the conduit from the venturi chamber to the lungs is again open and another inhalation begins. One characteristic of the Drager pulmotor that should be noted is that air is mixed with oxygen under pressure and it is the resultant mixture and not pure oxygen that is supplied to the lungs. This feature is called an "economy feature" and is not present in the Sinnett patent or in Erickson resuscitator.

The Erickson resuscitator is a more intricate device than either the Drager pulmotor or Sinnett. In it oxygen is caused to enter the lungs because of pressure exerted by a piston which itself is caused to move by the pressure of the incoming gas. The pressure inside the lungs is felt by a diaphragm and toggle mechanism which causes the oxygen under pressure to be directed in such a way as to cause the piston to draw the stale gas from the lungs and expel it into the atmosphere. The Erickson resuscitator was commercially successful and received the approval of the American Medical Association following a vigorous campaign aimed at obtaining that approval but it now appears to have been supplanted to a great extent by resuscitators employing the venturi rather than the more complicated piston mechanism. The Erickson resuscitator lacked the "economy feature" and supplied the patient

with pure oxygen, but it did not waste any oxygen in expelling the stale gas from the lungs as did Drager.

The Sinnett patent includes a venturi in the exhalation circuit which performs a function similar to that performed by the venturi in the Drager pulmotor. They both create a vacuum in the venturi chamber causing air to be withdrawn from the lungs. However, unlike the Drager pulmotor the Sinnett resuscitator does not employ the venturi in the inhalation circuit in order to combine fresh air with oxygen but rather supplies the patient with oxygen alone. The Sinnett device also utilizes the diaphragm and toggle mechanism of Erickson to reflect the changes in pressure within the patient's lungs rather than the more complicated and unwieldy bellows mechanism of Drager.

The primary issue to be decided is whether the district court was clearly erroneous when it found that the difference between the Sinnett invention and the prior art including the Drager and Erickson resuscitators was so slight that the invention would have been obvious on July 6, 1940, the time the invention was made, to a person having ordinary skill in the resuscitator art. See 35 U.S.C. § 103 (1952). The court in determining such an issue must be very careful to take into account that what may seem obvious to it at the time of trial, after the court has become familiar with the apparently simple improvements suggested in the patentee's invention, may not have been so obvious at the time of invention. The invention need not be such as could only be the result of a flash of genius. But on the other hand if a person having ordinary skill in the resuscitator art could have produced, if he had so desired, a machine such as that disclosed in the Sinnett patent without any exercise of inventive faculty, then such device would not meet the required standard of invention.

If Sinnett had merely replaced the bellows mechanism of the Drager pulmotor with the diaphragm and toggle mechanism of the Erickson resuscitator, it would be very clear that no invention resulted. It is obvious, however, that an additional change was made by Sinnett by his elimination of the economy feature. This was done by closing off the inlet from the atmosphere to the inhalation circuit. The district court held that the elimination of the economy feature was not invention relying on the principle that elimination of an element and of its function is not ordinarily invention. Richards v. Chase Elevator Company, 1895, 159 U.S. 477, 16 S.Ct. 53, 40 L.Ed. 225; Grayson Heat Control v. Los Angeles Gas Appliance Co., 9 Cir., 1943, 134 F.2d 478.

The issue upon which the opinion of the district court revolved was whether the placing of the venturi solely in the exhalation circuit and thus allowing the inhalation gas to pass directly to the patient without passing through the venturi constituted invention. It is argued that locating the venturi in this location eliminated danger of contamination. It is true that it does eliminate the danger of the venturi itself contaminating the oxygen supplied to the patient, but it does not eliminate the necessity of other parts of the device being cleaned after use by patients having contagious diseases. This improvement in itself is too slight to be deemed invention. It might also be pointed out that Sinnett's locating of the venturi solely in the exhalation circuit resulted in the disadvantage, as compared to Drager, of a theoretically greater consumption of oxygen. Erickson, it is to be remembered, while supplying the patient with pure oxygen during the inhalation cycle, would theoretically require a lesser supply of oxygen than Sinnett, as no oxygen was wasted during the exhalation cycle. Once it was assumed a theoretically greater consumption of oxygen would not be a bar to a successful resuscitator, placing the venturi solely in the exhalation circuit would have been obvious to a person having ordinary skill in the resuscitator art.

Upon examination of the Sinnett patent as a whole we see that it essentially follows the teaching of the Drager pulmotor in that it employs a venturi to exhaust the gas from the patient's lungs and uses a pressure sensitive mechanism to switch from the exhalation cycle to the inhalation cycle. It follows the teaching of the Erickson patent only in the utilization of a diaphragm and toggle device in the pressure sensitive mechanism and the supplying of pure oxygen and not a mixture of oxygen and air to the patient. It necessarily follows that if the economy feature is eliminated from Drager, there is no longer any compelling necessity for the retention of the venturi in the inhalation circuit. We, therefore, conclude that the district court was not clearly erroneous when it held that the novelty in Sinnett's device, i. e. namely locating the venturi in the exhalation circuit only, was a result of the application of mechanical ingenuity alone and not due to the exercise of any inventive faculty.

Plaintiff further contends that the district court was incorrect in not downgrading the standard of invention in this particular field because of the low level of mechanical skill in the resuscitator art. It is not necessary to determine whether § 103 of Title 35 could be so interpreted because there is no evidence to substantiate that the workers in this field had less than ordinary mechanical skill.

Claim 9 of Patent No. 2,468,741 claims a hand held portable resuscitator in which the venturi, the valve chamber, in which the oxygen is directed to the mask during the inhalation cycle and to the venturi during the exhalation cycle, and the pressure sensitive toggle and diaphragm mechanisms are in one casing and the face mask is directly connected to the outside of this casing. Oxygen is supplied through a conduit, usually a hose, running from the oxygen tank to this casing. This hose can extend as far as 200 feet from the oxygen supply and this portability and flexibility constituted a great improvement over prior resuscitators such as Erickson and Sinnett. In these earlier resuscitators, while the masks were separate from the resuscitator mechanisms, which mechanisms in both devices were joined with the heavy oxygen tanks, the masks could not be more than six feet from the bulky resuscitators and oxygen tank units because of the re-breathing problem.

The district court found that this improvement in portability required very little mechanical change other than the physical fact of separating the oxygen tank of the Sinnett resuscitator from the resuscitator mechanism and that this change did not constitute invention. It further found that the only other difference between Claim 9 and Sinnett was the elimination from Sinnett of the two tubes running from the resuscitator to the mask, one tube supplying fresh oxygen to the patient and the other removing stale gas from the lungs and the substitution therefor of a single short passageway from the resuscitator to the mask.

Again here, as with the Sinnet patent, it is necessary to determine whether the finding that the plaintiff's portable resuscitator was not inventive over the prior art is clearly erroneous. Plaintiff contends that the resuscitator mechanism in Sinnett was very heavy and, therefore, it was not obvious that it could be joined with the mask so as to form one portable unit which could be used many feet away from the source of oxygen. This would appear to be true if we accepted the necessity of joining the resuscitator mechanism of Sinnett in one unit with the heavy containers of oxygen, and this was the type of construction which was adopted by the plaintiff in its manufacture of Sinnett. However, Fig. 14 of the Sinnett patent clearly shows the resuscitator mechanism is connected to the oxygen supply by a flexible conduit rather than being permanently affixed thereto. It would not have required more than ordinary skill in the resuscitator art to affix the mask directly to the unit con-

taining the venturi, the valve chamber, and the diaphragm and toggle mechanism. Prior art in the form of Drager, Patent No. 1,150,508 (1915) and Drager British Patent No. 146,862 (1921) both set forth resuscitators, in which the resuscitator mechanism is joined to the mask and there is only one conduit, that being from the mask-resuscitator unit to the source of oxygen. Neither of these resuscitators operate automatically, both requiring the operator to manually switch the resuscitator from exhalation to inhalation and vice-versa.

■ The district court said all that plaintiff did was to utilize this idea of joining the mask with the resuscitator as set forth in the Drager patent and apply it to the Sinnett device. The result was a combination mask-resuscitator unit like Drager but with the resuscitator operating automatically as in Sinnett. Thus, based on the prior art there are two obvious avenues of approach to reaching the result achieved by plaintiff in his Claim 9. One is to modify Sinnett by replacing the two breathing tubes with one short connective passage between the motor chamber (i. e. that part of the Sinnett device where the diaphragm and toggle mechanism is located) and allow the incoming oxygen to pass directly into that motor chamber. This involves nothing more than simple mechanical change. The other way to achieve a portable resuscitator utilizing the elements of the pre-existing art is to employ the Sinnett resuscitator mechanism as a replacement for the manually operated resuscitator mechanism in the Drager combined resuscitator and mask unit. This simple replacement of parts also does not involve the inventive faculty.

■ The defendant's first cross appeal contends that the district court erred in its dismissal of its counterclaim for a declaratory judgment on Claims 1 and 2 of the Sinnett patent. These claims specifically require the inhalation circuit to be completely separate from the exhalation circuit. There was no evidence presented in the record that the defendant ever sold or intended to sell a device incorporating completely separate inhalation and exhalation circuits and the district court found that no controversy existed between the parties such as to give it jurisdiction over these two claims under the Declaratory Judgments Act, 28 U.S.C. § 2201 (Supp.1956).[1] Based on the record before us, this finding by the district court was correct. This is unlike the situation in Kalo Inoculant Co. v. Funk Bros. Seed Co., 7 Cir., 1947, 161 F.2d 981, reversed on other grounds, 1948, 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588, where the court of appeals held that the processing claims as well as the product claims should have been adjudicated by the district court. Here the defendant does know that the product it distributes does not infringe any valid claim of the plaintiff; in the Kalo case the court held that the defendant could not be sure of its position if the process claims were not adjudicated. In Flakice Corporation v. Liquid Freeze Corporation, D.C.N.D. Cal.1955, 131 F.Supp. 599, also cited by the defendant, the district court did decide that a substantial controversy existed as between competing ice machines and held that certain claims even though not infringed and not claimed by the plaintiff to be infringed were invalid. It may be that there was evidence to support a finding of the district court judge that a controversy existed between the parties on such claims even though plaintiff did not allege infringement. There is no evidence here that a concrete and

[1.] "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States and the District Court for the Territory of Alaska, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

**158**

definite controversy concerning Claims 1 and 2 of the Sinnett patent existed which touched the legal relations between the plaintiff and defendant. See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617.

■ Defendant in its second cross appeal seeks reversal of the district court's decision restricting it to recovery of only one quarter of its costs incurred in the preparation of twenty-five charts and a denial of all costs incurred in the taking of certain depositions in California, Arizona, New Jersey and Massachusetts. Fed.Rule of Civ.P. 54(d) provides in part: "Costs. Except where express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; * * *." Here the district court has directed otherwise. This matter of costs rests in the discretion of the district court. Jacquard Knitting Mach. Co. v. Ordnance Gauge Co., 3 Cir., 1954, 213 F.2d 503. Here it was decided that the charts were repetitious and overdone far beyond the needs of the occasion. The court also held that the depositions primarily related to certain devices that the defendant maintained were prior art, which defense was totally unsuccessful. In White Cap Co. v. Owens-Illinois Glass Co., 6 Cir., 1953, 203 F.2d 694, certiorari denied 346 U.S. 876, 74 S.Ct. 128, 98 L.Ed. 384, it was held not to be an abuse of discretion to divide the costs between plaintiff patentee and defendant even though the court affirmed the district court's finding that the patent in question was invalid for want of invention over the prior art. We hold that under the circumstances of the instant case it was not an abuse of discretion for the district court to deny the defendant full costs.

A judgment will be entered affirming the judgments of the district court.