**RAYBESTOS–MANHATTAN, INC.,**
Plaintiff, Appellant,

v.

**TEXON, INC.,** Defendant, Appellee.

No. 5490.

United States Court of Appeals
First Circuit.

July 29, 1959.

Rehearing Denied Aug. 26, 1959.

840

Melvin R. Jenney, Boston, Mass., with whom Lee J. Gary, Chicago, Ill., Kenway, Jenney, Witter & Hildreth, Boston, Mass., and Gary, Desmond & Parker, Chicago, Ill., were on brief, for appellant.

John B. Cuningham, New York City, with whom William A. Godfrey, Gerald W. Griffin, Michael A. Kondzella, William F. Kilgannon, New York City, Bulkley, Richardson, Godfrey & Burbank, Springfield, Mass., and Cooper, Dunham, Dearborn & Henninger, New York City, were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts granting the defendant's motion for summary judgment and awarding the defendant $5,000 as attorney's fees.

The plaintiff, a New Jersey corporation, is the owner of Patent No. 2,525,310 and brought an action for its infringement against the defendant, a Massachusetts corporation. The defendant filed a counterclaim for a declaratory judgment and also, as one of the usual defenses, denied that its process was an infringement of the patented process. The defendant subsequently filed a motion for summary judgment which was eventually granted by the district judge following the filing of numerous affidavits and counter affidavits, the filing of interrogatories and their answers by both parties, and the submission of a report by an impartial expert who was appointed by the district judge for advice on certain technical issues.

The plaintiff's patent was applied for November 30, 1944 and was issued on October 10, 1950. It relates to the production of fibre base plastics or more specifically "to a new and improved method for the production of thermosetting resin impregnated cellulose fibre web sheet material." Claim 2 of the patent which is typical is as follows:

"The method of producing paper base plastic sheet material capable of being heat molded and laminated

at a low pressure which comprises uniformly impregnating a cellulose fibre web with an aqueous solution of a water soluble phenol formaldehyde resin to provide in the web a residual resin solids content of from about 30% to about 60% by weight, drying the impregnated web by gradually heating it to a temperature of approximately 190° F., to 212° F., while continuously alternating the application of heat to the opposed surfaces of the web and terminating the heat drying when the moisture content of the web has been reduced to about 4% to 8% and with the resin in the 'A' stage and in the condition of a readily fusible viscous plastic."

The accused process was employed not for the manufacture of plastic sheets to be laminated together but rather for plastic sheets to be used individually for battery separators after being cured, ribbed and cut to size. It is stated in the specifications of the patent that the invented process resulted in a uniform distribution of resin throughout the fibre base so as to provide a resin content of about 30% to 60%, and that these resin impregnated sheets were capable of being molded and laminated in shaped forms under heat and low pressure so as to provide a product of high strength and density free from tendency to delamination.

The district judge found that the words of the claim limiting the moisture content of the web to "about 4% to 8% " and limiting the heating to "a temperature * * * of approximately 190° F. to 212° F." were absolute limitations. [170 F.Supp. 526.]

He further found that the Karl Fischer test was the most accurate means of ascertaining the moisture content. Moisture content was conceded by the plaintiff to be the content of water. The plaintiff in its brief raises no point as to the accuracy of the Karl Fischer method for determination of water content and we, therefore, assume the district court was correct in finding that this was the most accurate test. The Karl Fischer test as applied to the defendant's battery separators revealed that they contained from 1.2% to 2.9% of water content.

The district court further found that the defendant's process resulted in temperatures reading from 220° F. to 235° F. The district court then said that insofar as the plaintiff offered no evidence to show that the Karl Fischer test was inaccurate or that there was any other method of obtaining temperatures than that employed by the court appointed expert, that there was no genuine issue of material fact and that the defendant's process consequently did not infringe the plaintiff's patent.

The plaintiff in this appeal attacks the district court's granting of summary judgment on two principal grounds. The first ground is that the reliance by the district judge solely on the Karl Fischer test in determining the amount of moisture in the defendant's product was erroneous. The second ground is that the plaintiff was entitled to a range of equivalents with reference to the moisture content and temperature limits set forth in its claims.

■ The inventor of the plaintiff's patent, Izador J. Novak, in an affidavit stated that in determining the amount of moisture required for his process he relied on the "standard" desiccation method and at that time did not know of the Karl Fischer method, which involved the addition of a reagent containing iodine to a quantity of methanol in which was placed a sample of the substance tested. The plaintiff asserts that the district court erred in applying a test which was not known to those skilled in the art at the time the application for the patent was filed. The district judge, on the other hand, stated that " * * * the answer is that plaintiff's patent is silent as to any test for determining the claimed range of water content; that the Karl Fischer method is an accurate test; and that if some other test was implied by the patent claims then that other test

should have been explicitly cited." He cited Helene Curtis Industries v. Sales Affiliates, 2 Cir., 1954, 233 F.2d 148, certiorari denied 1956, 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80; Allen Bradley Co. v. Erie Resistor Corporation, 3 Cir., 1939, 104 F.2d 150 as authority for so holding.

We are of the opinion that the district court, under the circumstances presented here, was required to make a finding as to what test would be employed at the time of the patent application to determine the amount of moisture resulting from the process in question, by a person skilled in the art to which the application pertained. This is an objective standard and does not depend on the subjective intent of the inventor. Moreover, it does not cause the patent to mean one thing at the time of its issuance and another at some later date upon the discovery of a more accurate test.

We note that the patent in the Helene Curtis Industries case, supra, was for the discovery that certain critical limits existed for the use of mercaptans in hair waving, the general use of mercaptans in hair waving having been previously disclosed. It was a prerequisite to the patentability of this discovery that these limits established points at which some result differed in kind and not merely in degree from the results achieved by the prior art. The language of the court as to the use of post invention techniques related solely to the determination as to whether these necessary critical limits did in fact establish points at which results differed in kind. In the instant case the question is where the limits are set, and not, assuming it is known where the limits are, whether they are critical or not. Furthermore there does not seem to be any evidence in the record before us as to whether the plaintiff's patent was of a generic nature or was of a limited nature comparable to that in issue in the Helene Curtis Industries case.

■■ Allen Bradley Co. v. Erie Resistor Corporation, supra [104 F.2d 151],

also does not lend support to the district court's ruling. There the court held that the words "substantially graphitizing temperature" were to be interpreted in light of what that phrase meant at the time the patent application in question was filed. The alleged infringer's process employed temperatures about fifty per cent of those necessary at the time of the patent application but these later discovered limits could not be utilized to extend the patentee's monopoly to an area which it did not cover initially. Similarly in the instant case, the utilization of a definition of moisture content not recognized at the date of the patent application cannot be used either to limit or extend the scope of a patent as the patent must be interpreted in light of the skill of the art to which it pertains at the date of application.

We also disagree with the district court's conclusion that from the evidence before it the plaintiff was not entitled as a matter of law to any range of equivalents as far as the moisture content and temperature were concerned. The use of the qualifying words "about" and "approximately" with reference to moisture content and temperature would seem to be a signal that some range of equivalents was claimed. However, there is no indication that the district court gave any significance to the use of these words. It has been held in Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 that the doctrine of equivalents " * * * operates not only in favor of the patentee of a pioneer or primary invention, but also for the patentee of a secondary invention consisting of a combination of old ingredients which produced new and useful results * * * " "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." If the patent is a pioneer or primary invention it generally is entitled to a wide range of equivalents. See Miller v. Eagle Manufacturing Co., 1894, 151 U.S. 186, 207, 14 S.Ct. 310, 38 L.Ed. 121.

On the other hand, if the patent file wrapper history indicates that certain limitations were necessary in order for the patent to be granted the range of equivalency would be minimal. See Schriber-Schroth Co. v. Cleveland Trust Co., 1940, 311 U.S. 211, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132. But from the record before us it does not appear that any substantial evidence on the scope of the patent or its file wrapper history was submitted to the district court or that the district court even considered this issue when granting the defendant's motion for summary judgment.

Thus, because of the lack of any evidence as to the utilization of the Karl Fischer test by those skilled in the art at the time of application for the patent and the lack of evidence from which a finding as to the range of equivalency could be made, and the consequent failure to resolve these issues, the granting of the defendant's motion for summary judgment was error. It follows that the district court's allowance of attorney's fees to the defendant must also be vacated.

A judgment will be entered vacating the judgment of the district court and remanding the case for further proceedings consistent with this opinion.

MAGRUDER, Circuit Judge (Retired) (concurring).

Although I agree with the majority opinion that the plaintiff may be entitled to some range of equivalents on the Novak patent No. 2,525,310 owned by it, I cannot assign this as a reason for reversing the judgment below.

With regard to the water content of the web, the patent teaches a reduction to "about 4% to 8% by weight"; this marks out an area of some five percentage points, which in the context of the process involved is quite indefinite. It is therefore difficult for me to understand "about" as further expanding these nebulous limits of terminal water content. Rather, it more logically may be read as a flag signaling the description's inherent vagueness. It may be that a content of 3.8% or 8.2% would constitute infringement, on the doctrine of equivalents, but the patent can certainly not claim much more than that.

The limitation as to the temperature to which the web is heated seems to be even clearer. The patent repeatedly says, "approximately 190° F., to 212° F.," and once adds, in the general description of the invention: "It will, however, be understood that the temperature of the paper as it progresses over these drying drums is from normal room temperature to about 212° F., *and the drying is terminated before the temperature of the paper can rise higher*". This language, specifying not one temperature but a range of 22 degrees, even more indefinite than the moisture description, does not claim a significant range of equivalents. Moreover, the upper boundary emphasized by the language I have italicized is meaningful as the boiling or evaporation point of water, which the plaintiff concedes is the moisture element the patent refers to. In other words, the patent teaches heating water content up to, but not over, the boiling point. A process involving a temperature of 220 to 235 degrees Fahrenheit is pretty clearly not covered by the patent.

In any event, the question of equivalents, that is, whether the doctrine was applicable to this patent, was never really before the district court for decision, because it accepted moisture content figures of one to two per cent water [1] or 14 to 17 per cent total volatiles, and temperature readings of 220° F. to 235° F., as describing defendant's process—those figures, if they must be accepted, would as a matter of law put the defendant's process outside the range of any possible equivalents.

On the other hand, however, I agree with the majority that there is a substantial issue of fact as to the test implied by the moisture content limitations of the patent, for the reasons which

---

1. This lies within the prior claims of the Weber patent, No. 1,960,176.

Judge Hartigan has well discussed. Also, I am not satisfied that there is no remaining issue of fact as to the maximum temperature of defendant's web; temperature was not treated as an alternative ground by the district court, which based its decision almost exclusively on the moisture content. On these limited grounds, I concur in the result reached by the majority opinion.