BORG–WARNER CORPORATION et al.,
Defendants, Appellants,

v.

PARAGON GEAR WORKS, INC.,
Plaintiff, Appellee.

No. 6491.

United States Court of Appeals
First Circuit.

Heard June 15, 1965.

Decided Dec. 16, 1965.

Lewis, Circuit Judge, dissented.

---

3. Pearce v. Cox, supra.

Banner, Chicago, Ill., Robert W. Meserve, Boston, Mass., Haight, Simmons & Hofeldt, Chicago, Ill., and Nutter, McClennen & Fish, Boston, Mass., were on brief, for appellants.

William, R. Hulbert, Boston, Mass., with whom William W. Rymer and Charles C. Winchester, Boston, Mass., were on brief, for appellee.

Substituted Opinion of the Court.

Before ALDRICH, Chief Judge, LUMBARD\*, Chief Judge, and LEWIS\*, Circuit Judge.

ALDRICH, Chief Judge.

This is an action for patent infringement presenting the customary issues, both of which were decided below in plaintiff's favor. We will consider first the issue of infringement.

Plaintiff, Paragon Gear Works, Inc., is the owner of the Seavey pump, Patent No. 2,694,367. Plaintiff and defendant, Borg-Warner Corp., both manufacture hydraulically actuated automatic transmissions for inboard motorboat engines. Pressure for the system is provided by a pump built into and supplied with the transmission. For dynamic reasons the propellers, and hence the motors, of twin-engined motorboats customarily rotate in opposite directions. Accordingly, the pump must either be replaceable, or adjustable, or fitted with varying external "plumbing," so that whichever rotation of the drive shaft is chosen the fluid will be pumped in the same direction. The Seavey pump is adjustable. Its novelty, at least in function, is that the conversion is easily effected at the time of installation by merely reversing certain parts.

Described in general terms, the pump is a rotary crescent gear pump, with axial flow. The heart of the pump is two gears mounted eccentrically, one within the other, in a housing. The external gear has internal teeth. The internal gear, rotating on the drive shaft, has external teeth meshing into a portion of

Edward A. Haight, Chicago, Ill., with whom John W. Hofeldt, Donald W.

---

\* Sitting by designation.

the teeth of the outer gear. Because of the relatively small diameter of the inner gear, there is, opposite the meshing an open crescent-shaped space, normally occupied by a block, or "barrier." Rotating the inner gear in turn rotates the outer gear, and if oil is supplied at the point where the teeth separate it will be drawn in, carried around the crescent, and subsequently forced out where the teeth converge.

It is obvious that should the gears revolve in the opposite direction, the liquid would be swept along the crescent in the opposite direction. It is perhaps less obvious that opposite flow can be obtained by changing the position of the crescent without changing the rotation of the drive shaft. If the crescent is located over a drive shaft turning clockwise, oil will be swept over the drive shaft, around the crescent from left to right. If the crescent is relocated under the same drive shaft, oil will be swept under the shaft, around the crescent, from right to left. Hence, if the drive shaft's rotation is reversed, and the crescent relocated, the changes will cancel out and the oil will flow in the same direction as before.

The pump requires an internal arrangement to carry the oil to and from the ends of the crescent. In plaintiff's pump, which is adjustable in the manner described, this is accomplished by a seal plate with apertures at the appropriate positions, leading, in turn, to ports within a channelled cover plate. One of these channels leads to the source of the oil. The other is connected by a similar passage to the mechanism actuating the transmission.

So far, we have described nothing that was new in the art. The district court found, and plaintiff agrees, that "crescent gear pumps are old, that cover plates and seal plates of various forms are old, and that reversal * * * obtained by inverting the crescent and gears alone * * *" is old. The record shows also that axial as distinguished from radial

flow pumps are old. Seavey's improvement, as already stated, was that in a single pump adjustment could be effected while retaining the same parts. He designed a single seal plate and complementary cover member such that the pump housing and gears could be mounted upon the same cover plate and seal plate with the crescent either above or below the drive shaft.

Plaintiff's seal plate is a flat disc with obversely symmetrical apertures which direct the flow of the oil. Its cover member is similarly symmetrical. The ports through which the oil enters and leaves have been extended, in degrees of circumference, beyond ports in covers of the prior art, so that together they completely encircle the opening through which the drive shaft passes. Thus one or both of the ports in plaintiff's cover member is available to register with the apertures in the seal plate no matter how the pump is placed on the cover. Specifically, in either of two positions the apertures in the seal plate fall on either side of the partitions which separate the chambers. In one the crescent is over the drive shaft; in the other, it is under. Plaintiff's patent claim 2 describes this novel aspect of the design as "a cover member for said rotor [gear] having an inlet port and an outlet port each extending substantially 180° along the periphery of one side of said rotor. * * *" Correspondingly, the adjustment in the location of the pump housing is described as "rotation through approximately 180° * * *." Claim 1 contains a similar description of the cover member, but describes the pump housing only as being "freely rotatable" so that the apertures in the seal plate may be brought into communication with the other port in the cover plate. However, the 180° concept is implicit. (See fn. 2, infra.)

As the design of the accused pump shows, the 180° is not critical to successful operation. The defendant's pump is exactly like plaintiff's except that the ports in its cover member are not semicircles. One is an arc of 109°; the

other, an arc of 203°.[1] The critical fact is that together defendant's ports extend far enough around the perimenter of the pump gears so that the apertures in the seal plate will register with the ports in two positions.

The nature of Seavey's innovation was revealed in the following colloquy during cross-examination of plaintiff's expert witness.

> "XQ. What he [Seavey] did was to take a group of parts, all of which were old, and apply a principle which was old, right? A. Yes, but the difference is in the detailed design of these parts."

So, also, the difference between the plaintiff's and defendant's pumps "is in the detailed design of these parts."

The district court found that not only did defendant's pump achieve the same efficiency and economy of parts, but that functionally the two pumps were alike. We do not disagree. We cannot, however, accept so readily its conclusion that from these circumstances infringement followed. At the cost of some repetition, we now proceed to that issue. We note, parenthetically, that the court did not state in so many words whether it believed there was literal infringement or whether it found infringement by way of the doctrine of equivalents. The record as a whole is sufficient to enable us to consider these questions separately.

The court found that defendant's pump "has the identical elements and the identical relationship" as plaintiff's, and that "it operates functionally in an identical manner to accomplish the identical result * * *." Defendant denies infringement on the ground that its own "detailed design" was substantially different. Specifically, its ports are asymmetrical, and are 109° and 203°, respectively, instead of "each * * * substantially 180°." as stated in both allowed claims of the patent. Moreover, the repositioning, or rotation, by which reversal is effected, which in the accused device is 127½°, is described in the patent as 180°, or "approximately 180°."[2] Plaintiff responds that defendant's differences are matters of no consequence. Defendant's change in the size of the ports is "slight," and "does not even avoid literal infringement." Continuing, plaintiff states, "The claims refer to the cover member ports as extending 'substantially' 180°. Defendant would in effect read out of the claim the word 'substantially.' But it is there, and it has meaning."

However, it is plaintiff who abuses the meaning. Plaintiff correctly asserts that "substantially" cannot be determined in the absence of a context or standard. Citing cases, it suggests that "things are 'substantially' (i. e., in substance) the same if they are the same as a practical matter from the standpoint of doing the same overall job." It goes on to argue that the substance of the invention is that "the cover ports must be of length to mate with the seal plate apertures in two rotative positions * * *." This proves too much. It is true that different words and symbols are able to connote different degrees of generality. Here plaintiff has employed perhaps the most specific symbol, a number, and then

---

1. The designs also differ in the location of the bolt holes. Plaintiff has contrived its pump so that one set of tapped holes will do for both positions of the pump housing; defendant makes use of the same bolt cover member. We attach no weight to plaintiff's bolt holes, or defendant's difference.

2. The amount of rotation is stated as "approximately 180°" in claim 2. No figure is given in claim 1. The specifications applicable to both claims describe the reversal operation as being "to rotate these parts 180°." Cf. Schriber-Schroth Co. v. Cleveland Trust Co., 1940, 311 U.S. 211, 217, 61 S.Ct. 235, 238, 85 L.Ed. 132 ("claims of a patent are * * * to be read or interpreted in the light of its specifications."). Plaintiff's brief, in discussing the two claims, asserts that in fact they are the same in this aspect, stating that the phrase "approximately 180°" or "mode of operation was implicit in the already-present 'substantially 180°' limitation" appearing in both claims with respect to the cover ports.

broadened its meaning by the modifier "substantial." This is, of course, a useful and often necessary conjunction of words, but the modifier cannot be taken to negative entirely the specificity of the numeral it modifies. Rather, the phrase as a whole must be given a reasonable meaning. Plaintiff is correct that "substantially" and "approximately" cannot be read out of the patent. Raybestos-Manhattan, Inc. v. Texon, Inc., 1 Cir., 1959, 268 F.2d 839. But neither can the presence of these words render the specific numbers of no moment. See Magruder, C. J., concurring in Texon, 268 F.2d at 843.[3]

■ Even if plaintiff had posited "substantially 180° " in a context where the relevant maximum number of degrees was infinite, we would look hesitantly at a claim that 109° came within the phrase. In the context of a crescent gear pump, the range of any departure from 180° becomes rather narrow when it is recognized that the sum total of the two cover ports cannot exceed 360°, and that to the extent one port is greater than 180° the other must be less. As for repositioning the pump for reversal, it is to be observed that in a free member 180° is the maximum rotation. As plaintiff's witness and its brief perforce concede, to rotate more than 180° in one direction is the same as to rotate less than 180° in the other.[4] When 180° is the maximum extreme we could not conceivably say that 127½° was "approximately 180°." No more could we say that 109° was "substantially 180°," or that 109° and 203° were "each substantially 180°." It follows that there was no literal infringement.

■ Plaintiff, alternatively to its claim of literal infringement, asserts equivalency. There may be much to be said for holding a patentee to what the language of his claims can reasonably bear. Not only is this in keeping with the spirit of the statutory requirement that an applicant present "claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention," 35 U.S.C. § 112, but it puts the initial decision of patentability clearly within the hands of the Patent Office. Nonetheless, onto the statutory scheme has been engrafted a venerable doctrine by which, "after all aids to interpretation have been exhausted, and the scope of the claims has been enlarged as far as the words can be stretched, on proper occasions courts make them cover more than their meaning will bear." Royal Typewriter Co. v. Remington Rand, Inc., 2 Cir., 1948, 168 F.2d 691, 692, cert. den. 335 U.S. 825, 69 S.Ct. 50, 93 L.Ed. 379. This doctrine of equivalents protects a patentee against a device that "performs substantially the same function in substantially the same way to obtain the same result" as the patent. Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147; Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097. In part the doctrine may be an equitable escape from undue hardship to the patentee. See Note, The Doctrine of Equivalents Revalued, 19 Geo.Wash.L.Rev. 491 (1951) and Note, 29 Id. 917 (1961). It serves an important procedural function in the patent scheme as well, by reducing "the otherwise inordinate length to which language might have to be carried." Emerson v. National Cylinder Gas Co., D.Mass., 1956, 146 F.Supp. 581, 588, aff'd, 1 Cir., 251 F.2d 152.

Carried to an extreme, the doctrine of equivalents could undermine the entire patent system. However, several

---

3. If Texon can be taken to suggest that words in a patent such as "substantially" and "approximately" set the range of equivalents as a matter of law, we repudiate the suggestion. Indeed, Texon is a case where too wide a range could invalidate the patent. Cf. H. C. Baxter & Bro. v. Great Atlantic & Pacific Tea Co., D.Me.1964, 236 F.Supp. 601, aff'd, 1 Cir., 1965, 352 F.2d 87.

4. We are reminded of the conundrum, "How far can a dog run into the woods?" "Halfway, because after that he is running out of the woods."

limiting principles strike a compromise between the docrine and the alternative of holding a patentee to the language of his claims. One means of maintaining the "primary jurisdiction" of the Patent Office, so-called file wrapper estoppel, is that claims narrowed in response to objections of the Office cannot be recaptured in broad form in subsequent proceedings. Exhibit Supply Co. v. Ace Patents Corp., 1942, 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736; Schriber-Schroth Co. v. Cleveland Trust Co., supra. Defendant asserts that to include its device within the patent would offend this principle.

The original application, in addition to the usual preamble, specifications and drawings,[5] contained four claims. Although the specifications described the two cover ports as collectively forming, except for separating partitions, "a complete circle," (i. e., substantially 180°), and referred to the rotation necessary to reverse the unit as 180°, three of the four claims contained no reference to degrees or other measurement, but spoke only of "functional alignment" of the cover ports, and described the rotation in general terms.[6] One of the original claims, claim 3, was more specific describing ports of "semicircular shape," and providing for rotation of 180° to achieve reversal. After the examiner rejected all claims as anticipated, the applicant made slight amendments. All claims were thereupon again rejected as anticipated, and "further rejected as indefinite, incomplete and functional * * *." The applicant then cancelled all four claims and added three new ones. One of these was subsequently withdrawn, but the other two became the final allowed claims of the patent. Both final claims referred to ports "each extending substantially 180°," and, after further amendment, in effect described the rotation as 180° or "approximately 180°." [7]

The district court found that "these limitations, added at the insistence of the Patent Office were based on that Office's rejection for indefiniteness * * *." [8] Plaintiff, on the contrary, asserts, "The words 'substantially 180°' were not introduced to meet *any* Patent Office objection, whether because of prior art, indefiniteness, or otherwise." (Ital. in orig.) Plaintiff's insistence on this point has caused us to examine the entire papers transmitted by the district court. We find in "Plaintiff's Post Trial Brief" the following statement, "The limitations were added at the behest of the Patent Office based on a rejection for *indefiniteness,* [record citations omitted]—not to distinguish any prior art." (Ital. in orig.)

We cannot but remark upon the manifest impropriety of stating one's factual position to the district court and then objecting on appeal because the court adopted it. We reach, accordingly, the court's ruling that "inasmuch as Seavey never surrendered anything for the purpose of distinguishing the prior art, the doctrine of file wrapper estoppel is not properly invoked here." Although there are cases which appear to support this broad proposition, e. g., McCullough Tool Co. v. Well Surveys, Inc., 10 Cir., 1965, 343 F.2d 381; Toy Ideas, Inc. v. Montgomery Ward & Co., D.Md., 1959, 172 F. Supp. 878, others do not. Powder Power Tool Corp. v. Powder Actuated Tool Co.,

---

5. None of these was ever changed. Plaintiff would have us conclude that file wrapper estoppel was not applicable because this circumstance shows that no change in scope or substance was ever effected. We find the suggested conclusion by no means inevitable.

6. In describing the rotation, two of the claims stated that the pump unit and seal plate were "adjustable relative to said cover member * * *." A third stated

that reversal was achieved "by rotating these parts in a predetermined like degree in their own planes."

7. See fn. 2, supra.

8. Strictly, although variously expressed from time to time during the proceedings, the examiner's objection which resulted in the changes herein question was that the claims were "indefinite, incomplete and functional because sufficient structure is not recited * * *."

7 Cir., 1956, 230 F.2d 409 (aggregative and indefinite); Parke, Davis & Co. v. American Cyanamid Co., 6 Cir., 1953, 207 F.2d 571 (claim broader than disclosure). Actually, we believe there is no real conflict, except linguistic. So far as the facts may be gathered from the opinions, the decisions fit roughly into the distinction we are about to develop, infra.

Plaintiff's position that changes made to render claims more definite can never give rise to estoppel "is firmly rooted in fundamental principle and policy" is hardly accurate. We think of no reason, and find none suggested in the cases, why the importance and materiality of language in a claim depend upon the particular objection the Patent Office had voiced. A patent may be just as invalid because the description is inadequate as it may be because of the prior art, Standard Brands, Inc. v. National Grain Yeast Corp., 1939, 308 U.S. 34, 60 S.Ct. 27, 84 L.Ed. 17; General Electric Co. v. Wabash Appliance Corp., 1938, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; H. C. Baxter & Bro. v. Great Atlantic & Pacific Tea Co., fn. 3, supra, and the examiner is as much within his rights in making one type of objection as another. Examiners doubtless on occasion overemphasize the formal requirements of 35 U.S.C. § 112. But, equally, they may demand changes in order to avoid alleged impingement upon prior inventions when in fact there is none. If an applicant who accedes to a demand based on the prior art is thereafter estopped to contest its necessity, he should equally be estopped to deny the correctness of a demand for which some other reason is given. To a party examining the file to determine the true scope of what has been granted, and finding something affirmatively disclaimed, it should make no difference what was the purpose of the disclaimer.

■ In our opinion the determinative factor should be not the reason why a change was required by the Patent Office, but what, in fact, was surrendered. If, in the case at bar, the length of the ports, in degrees, and the rotation, had originally been described as "between 90° and 180° " and, upon the examiner's insistence, this had been changed to "substantially 180°," it should make no difference whether his reason was an alleged conflict with prior art or alleged insufficient definiteness. In either event a subsequent party, examining the file to make sure that his own device, with parts extending 109° and 203° and having a rotation of 127 1/2°, would not infringe, would discover that so broad a scope had been affirmatively disclaimed. The patentee, accordingly, should be estopped to recapture it.

■ The supposed example, however, is not the case at bar. Review of the file wrapper as a whole discloses that the examiner's objection was that amounts were not indicated at all, i. e., that the invention was described only in terms of function. See fn. 8, supra. Hence when Seavey furnished details, although he was necessarily incorporating limitations, he gave up only an undescribed device. In these circumstances by asserting equivalence the plaintiff is not seeking to recapture what had been abandoned, because nothing having been previously stated, nothing had been abandoned. The claims, in other words, stand as claims initially made, entitled to the ordinary range of equivalents. Cf. Reece Button-Hole Machine Co. v. Globe Button-Hole Machine Co., 1 Cir., 1894, 61 F. 958; Emerson v. National Cylinder Gas Co., supra. See also Graver Tank & Mfg. Co. v. Linde Air Products Co., supra.

■ On the court's finding that defendant appropriated the essence of Seavey's invention, which we cannot label plainly erroneous in spite of the differences in the degrees, its determination of infringement must stand.

We turn to the question of validity. The Seavey pump is not a pioneer invention. As the court found, the prior art reveals "that crescent gear pumps are old, that cover plates and seal plates of various forms are old, and that [in prior art] reversal may be obtained by inverting the crescent and gears alone, or by a specially designed labyrinthine seal plate * * *." Seavey's novelty was

his design, which contributed a pump adjustable to accommodate either direction of shaft rotation by simple manual reversal, with a simple non-labyrinthine seal plate and no extra parts. This was a useful accomplishment; its simplicity does not preclude invention. Patterson-Ballagh Corp. v. Moss, 9 Cir., 1953, 201 F.2d 403, 406. While we consider the question close, we cannot say that the court's findings to the effect that the patent was inventive and was not indicated by the prior art are unwarranted.

We do not accept defendant's "on sale" contention, nor its forced construction of the injunction. We do hold, however, that the closeness of the questions in this case, as indicated by this opinion, makes it inappropriate to award counsel fees as costs. Paragraph 8(b) of the judgment must be vacated and set aside. In other respects the judgment is affirmed, with costs to appellee.

LEWIS, Circuit Judge, (dissenting).

I dissent. My concurrence in the court's original opinion [1] was based upon contentment with result supported by a convenient subjective application of the generality that the doctrine of equivalents has no broad scope to premise infringement when the grant of patent has required the applicant to be satisfied with specific and strict limitation of claims. The basis of inventiveness is thus clearly defined and the range of equivalency becomes, as this court has stated, "minimal." Raybestos-Manhattan, Inc. v. Texon, 1 Cir., 268 F.2d 839, 843. But I do not disagree with the court's views on infringement were they projected against a background of a valid patent issued for inventiveness in principle, part or combination. I do not consider the case at bar to present such a background. To me, the prior art discloses both the operative principle and parts of the Seavey patent. And, indeed, appellee's expert witnesses so conceded, asserting the inventiveness lay in the detailed design of the parts to obtain maximum cooperation.

These particulars of design consist of an even number of bolt holes in the pump housing, equi-spaced, and symmetrical 180° parts in the transmission cover plate. Neither of these particulars is present in the accused device (except, as broad equivalents) and, again, to me, are obvious and disclosed in the prior art including the Packard marine transmission and appellant's own automotive transmission.

---

1. The court's original opinion, filed but withdrawn, held the patent uninfringed and indicated possible disagreement upon, but did not reach, the issue of validity.