**RAYBESTOS–MANHATTAN, INC.,**

v.

**TEXON, INC.**

Civ. A. No. 57–526.

United States District Court
D. Massachusetts.

Jan. 16, 1959.

Kenway, Jenney, Witter & Hildreth, Milvin R. Jenney, Jeremiah Lynch, Boston, Mass., Gary, Desmond & Parker, Lee J. Gary, Chicago, Ill., for plaintiff.

Bulkley, Richardson, Godfrey & Burbank, Wm. A. Godfrey, Springfield, Mass., for defendant.

WYZANSKI, District Judge.

Defendant moves for summary judgment dismissing the complaint on the ground that there is no infringement of any claim of Novak patent No. 2,525,310 in suit.

The patent claims a very specific method for the production of a cellulose fibre web sheet material impregnated with a thermosetting resin, "primarily" for laminating purposes.

The accused process is for making not a laminate but a battery separator by impregnating or saturating a cellulosic web while wet with a water-soluble phenolformaldehyde resin. After being saturated with resin, the web is passed through a heat drying stage and then to a forming operation in which the web is cured, ribbed, and cut to size.

Each of the patent claims contains the following absolute limitations:

(1) " * * * terminating the heat drying when the *moisture content* [that is, as the parties to this litigation agree, the *content of water*] of the web has been reduced to about 4% to 8% * * *" and

(2) " *. * * drying the impregnated web by gradually heating to a temperature [that is, as the affidavits admit, *the maximum temperature in the fibres or in the paper web itself, not just in one layer or surface of the web*] of approximately 190°F to 212°F * * *."

Defendant's contention, which as this opinion indicates hereafter is fully warranted by the uncontradicted facts shown in affidavits, is that it has never practiced either of the above steps in the making of its battery separators. Defendant's process yields a web having

about 1 to 2% water or 14 to 17% total volatiles at the end of the heat drying. Moreover, defendant dries the web by heating it to a temperature of 220°F. to 235°F.

*Plaintiff's* expert, Dr. Landt, examining defendant's product, failed to establish moisture content of over 4% and did not dispute defendant's temperature readings of over 212°F.

An impartial expert, Mr. John J. Mitchell, Jr. selected at a pre-trial hearing, [see this Court's Order of June 18, 1958] reached the same conclusions. His report shows that—

1. The Karl Fischer test is an accurate, and indeed the only accurate, test for water at the end of the heat drying in defendant's web. That test shows defendant's web is below the 4% moisture content specifically claimed in the patent.

2. Pyrometer temperature readings show that defendant heats its web from 220°F to 235°F. This is above the 212°F specifically claimed in the patent.

Plaintiff has not offered evidence that there is a more accurate test than the Karl Fischer test which shows water content at the end of heat drying in defendant's process.

Nor has it offered evidence that there is a way to determine maximum temperatures throughout defendant's moving web, as called for by plaintiff's claims.

Taken together these last six paragraphs constitute undisputed evidence that negatives the complaint of infringement. They show that so far as concerns infringement there is in this case no genuine issue of material fact.

Plaintiff suggests that a result different from the Karl Fischer test might be forthcoming if resort were had to some desiccation test of moisture content. To this suggestion the answer is that plaintiff's patent is silent as to any test for determining the claimed range of water content; that the Karl Fischer method is an accurate test; and that if some other test was implied by the patent claims then that other test should have been explicitly cited. Helene Curtis Industries v. Sales Affiliates, 2 Cir., 233 F.2d 148, 154–155; Allen-Bradley Co. v. Erie Resistor Corp., 9 Cir., 104 F.2d 150.

Defendant's motion granted.