851 F.Supp. 1382 (1994)
QUANTUM CORPORATION, Plaintiff,
v.
RODIME PLC, Defendant.
Civ. No. 4-93-214.
United States District Court, D. Minnesota, Fourth Division.
April 11, 1994.
*1383 Terence M. Fruth, Douglas L. Elsass, and Fruth & Anthony, P.A., Minneapolis, and John F. Lynch, Richard L. Stanley, J. Mike Amerson, and Arnold, White & Durkee, Houston, TX, for plaintiff.
Robert V. Atmore, and Lindquist & Vennum, Minneapolis, and Margaret K. Pfeiffer, Thomas R. Leuba, Alice S. Fisher, and Sullivan & Cromwell, and John C. Altmiller, and Kenyon & Kenyon, Washington, DC, for defendant.

ORDER
DOTY, District Judge.
This matter is before the court on plaintiff Quantum Corporation's motion for partial summary judgment. Based on a review of the file, record, and proceedings herein, the court grants the motion.

BACKGROUND
This matter involves the alleged invalidity of defendant Rodime PLC's ("Rodime") patent, U.S. Patent No. Bl 4,638,383 ("'383 patent") entitled "Micro Hard-Disk Drive System". The patent describes a micro-winchester disk drive system designed to meet the demands of a portable computer system.[1]
In the early 1980's, Rodime began development of a hard-disk drive system to be used in portable computers.[2] Its focus centered on the creation of a 3.5" system that, while smaller than the standard 5.25" systems then available, had similar performance parameters. In January 1987 the '383 patent issued. The patent covered Rodime's winchester drive that utilized a rotary actuator designed to move the read/write heads over the disk along an actuate path that extends in the radial direction with respect to the disk.
After the issuance of the '383 patent, Rodime became enmeshed in a multiplicity of lawsuits. In response to these actions, Rodime requested that the Patent Office reexamine the original '383 patent in September 1987. In April 1988, after performing the reexamination, the Patent Office rejected all but two of the claims. Rodime subsequently filed amended claims in June 1988. Among other changes, Rodime amended the claim phrase "at least 600 concentric tracks per inch" to read "at least approximately 600 concentric tracks per inch." In November 1988, the Patent Office issued a reexamination certificate declaring Rodime's patent, as amended, valid.
After the reexamination proceedings, discussions ensued between the representatives of the parties in which Rodime accused Quantum of infringing the reexamined '383 patent. On February 26, 1993, in response to those discussions, Quantum filed the present declaratory judgment of nonliability for patent infringement against Rodime asserting that the '383 patent was invalid, unenforceable and not infringed. Rodime answered the complaint and filed a counterclaim for infringement.
Quantum now moves for partial summary judgment. Quantum contends that it is entitled to summary judgment due to the invalidity of claims 4, 6, 7, 9, 14, and 19-27 of the '383 patent. Quantum argues that the amendments made during the reexamination proceedings, specifically the addition of the word "approximately" impermissibly broadened the scope of the '383 patent in violation of 35 U.S.C. § 305.[3]

*1384 DISCUSSION
The court applies the same summary judgment standard to motions involving patent claims as it does to motions involving other types of claims. Avia Group Int'l. Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1561 (Fed.Cir.1988) ("It is no longer debatable that the issues in a patent case are subject to summary judgment."); Union Carbide Corp. v. American Can Co., 724 F.2d 1567, 1571 (Fed.Cir.1984) ("[T]he statutory purpose of the grant of summary judgment under Fed.R.Civ.P. 56 is without question intended to be effectuated in patent litigation as in any other type of suit and in accordance with the same standard.") (footnote omitted).
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) which requires the trial court to enter judgment as a matter of law if, under the governing law, there can be but one reasonable conclusion as to the verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. Id. at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a party cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23, 106 S.Ct. at 2552-53. With this standard at hand, the court will consider Quantum's motion for summary judgment.
To rule on this summary judgment motion, the court must determine whether a material issue of fact exists as to the validity of the amended '383 patent.[4] The threshold requirement in analysis of claim construction is an examination of the claims at issue. McGill Inc. v. John Zink Co, 736 F.2d 666, 672, 221 USPQ 944, 948 (Fed.Cir.) cert. denied, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). To determine the validity of the patent, the court reviews the specific claim language, the specification, and the prosecution history. ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1579, 6 USPQ2d 1557, 1560 (Fed.Cir.1985). Review of these several factors provides the court a basis for determining the validity of the patent.
Review of the validity of a reexamined patent centers on whether the particular amendment to the claims is substantive so that the scope of the claims is no longer substantially identical to the originally issued claim. Slimfold Mfg. Co. v. Kinkead Indus., 810 F.2d 1113, 1 USPQ2d 1563 (Fed.Cir. 1987). No presumption exists as to whether amendments made during reexamination broaden the scope of the patent. Laitram Corp. v. NEC Corp., 952 F.2d 1357, 1362, 21 USPQ2d 1276 (Fed.Cir.1991). Rather, the determination of the scope of the claims must *1385 be reexamined as a question of law. SSIH Equipment S.A. v. USITC, 718 F.2d 365, 375, 218 USPQ 678, 688 (Fed.Cir.1983). Amendments are permissible so long as they are mere clarifications of language which make specific what was always implicit or inherent in the patent claims. Seattle Box Co. v. Industrial Crating & Packing, Inc., 731 F.2d 818, 828, 221 USPQ 568, 575 (Fed.Cir.1984). Claims made more definite by adding a term from the specification without a change in the scope of the claims are not substantively changed, and the claims are "legally identical." Tennant Co. v. Hako Minuteman, Inc., 878 F.2d 1413, 1417, 11 USPQ2d 1303, 1306-07 (Fed.Cir.1989); cf. Slimfold Mfg. Co. v. Kinkead Indus., 810 F.2d 1113, 1 USPQ2d 1563 (Fed.Cir.1987). If the language of the claims is undisputed, the district court can interpret or construe the undisputed claims as a matter of law. Singer Manufacturing Co. v. Cramer, 192 U.S. 265, 275, 24 S.Ct. 291, 295, 48 L.Ed. 437 (1904). Thus, the task presented to the court is to review the inclusion of the word "approximately" to the claims during the reexamination and determine whether that amendment broadened or merely clarified the claims of the '383 patent.

A. Claim Language
The first requirement in claim interpretation is to examine the claim language. ZMI Corp., 844 F.2d at 1579, 6 USPQ2d at 1560. In analyzing claim language, the claim must be read in accordance with the precepts of grammar and words should be given their plain, ordinary meaning. In re Hyatt, 708 F.2d 712, 714 (Fed.Cir.1983). This ordinary and plain meaning should not be challenged unless it appears that the inventor used the words differently. Envirotech Corp. v. Al George Inc., 730 F.2d 753, 759, 221 USPQ 473 (Fed.Cir.1984). Moreover, the meaning which the inventor gives to his words can not be made to depend upon subsequent events, but should appear when the application is filed. Envirotech Corp., 730 F.2d at 759; Universal Oil Products Co. v. Globe Oil & Refining Co., 137 F.2d 3, 6, 54 USPQ 504 (7th Cir.1943), aff'd 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944).
The language at issue is the subject of claims 4, 6, 7, 9, 14 and 19-27 of the '383 patent. Specifically, those claims rely on the phrase "at least approximately 600 concentric tracks per inch ["tpi"]." This phrase represents the language of the claims after Rodime's reexamination amendment. The initial patent application claims used the phrase "approximately 600 tpi." After the examiner's first rejection the phrase was amended, and the patent issued with the crucial phrase reading "at least 600 tpi." During reexamination the claims were again rejected and Rodime amended the claims to include the word "approximately," thus providing the contested phrasing. Quantum contends that the addition of the word "approximately" during reexamination, when used in combination with "at least," improperly broadened the scope of the claims.
The words "at least" mean "... at the lowest estimate; at the smallest concession or claim; in the smallest or lowest degree; at the smallest number." Black's Law Dictionary 1438 (5th ed. 1979). The use of "at least" to modify "600 tpi" suggests that "600 tip" is a minimum or a lowest value of the track density achieved in the invention. Rodime's use of "at least" in its claims would indicate that its drives have densities starting at, but greater than, 600 tpi. A similar meaning was attributed to "at least" by the Third Circuit in Allen-Bradley Co. v. Erie Resistor Corp., 104 F.2d 150 (3d Cir.1939). The claim at issue there incorporated the phrase "... but to substantially graphitizing temperature at least 1927 degrees Centigrade...." Id. at 151 (emphasis added). In determining whether infringement had occurred, the court stated that the use of "at least" in that phrase meant that temperatures included "would not include temperatures of less than 1927 degrees centigrade." Id. at 152 (emphasis added). The court further stated that the inventor, due to the inclusion of this language, was estopped from asserting that lower temperatures would be covered. Id.
The word "approximately" is defined "in the sense of an estimate merely meaning more or less, but about and near the amount, quantity, or distance specified." Black's Law Dictionary 94 (5th ed. 1979). The position of "approximately" in the phrase at issue requires that it be read to modify the value 600 *1386 and therefore, "600 tpi" is no longer an absolute value. The addition of the word "approximately," a word that is unquantifiable and indefinite, erodes the "not less than" meaning of "at least."
Quantum argues that the addition of "approximately" which erodes the definiteness of "at least," was an intentional and necessarily broadening change in the claims, because without the addition of "approximately", the claims language did not cover the invention. Quantum bases its position on the notes of Dr. Jack McGinley[5], a named inventor. In his notes, Dr. McGinley calculated that 596 tpi was the maximum density achieved by the Rodime drive. Quantum Ex. G and H. According to Dr. McGinley's calculations, the average track density was only 572 tpi with a maximum density of less than 600 tpi with a range between 559 tpi and 596 tpi. Quantum Ex. H. No density greater than 600 was ever achieved. The drive could not be said to have a density of "at least" 600 tpi when no measured value had ever equalled or exceeded 600 tpi. Therefore, inclusion of "approximately" changed the meaning of the original descriptive phrase to include the invention's achieved results. As amended, the claimed density would be read as "about or near 600 tpi." Thus, focusing on a literal interpretation, Quantum argues that the meaning of the claims has been substantively changed, not merely clarified.
In support of its motion for summary judgment based on the substantive change in the claims language, Quantum relies on Seattle Box Co. v. Industrial Crating & Packing, Inc., 731 F.2d 818, 221 USPQ 568 (Fed.Cir. 1984). In Seattle Box, the Federal Circuit held that a change from "greater than" to "substantially equal to or greater than," in the claim, was a substantive change and thus impermissibly broadened the scope of the patent. Id. 731 F.2d at 827-28. The Seattle Box court went on to observe that the change was "not a matter of mere clarification of language to make specific what was always implicit or inherent." Id. at 828. Quantum asks this court to find Rodime's changes to be similarly substantive. Relying simply on the ordinary usage of the words in the contested phrase, the court finds that the inclusion of the word "approximately" appears to impermissibly broaden the scope of the claims.
However, Rodime asserts that the words in the contested phrase are not used ordinarily and attempts to distinguish this case from Seattle Box on that basis. In Seattle Box the disputed terms were used to modify the word "diameter" which was not used as a term of art. Id. at 827-828. In this case Rodime contends that "600 tpi" is a term of art. Although the addition of the word "approximately" appears to broaden the scope of the claim, Rodime argues that "600 tpi" is a term of art that "approximately" merely clarifies. Thus, the language of the claims at issue is in dispute and other tools of construction must be used. McGill Inc., 736 F.2d at 672-74, 221 USPQ at 948-50. If "600 tpi" is a term of art, it may have attributed to it a specialized meaning differing from its ordinary meaning.

B. Specification
When the meaning of the claims language is disputed, reference is made to the specification and prosecution history. McGill Inc., 736 F.2d at 672-74, 221 USPQ at 948-50. This further inquiry is required because patent law allows the inventor to be his own lexicographer. Since the inventor is not confined to normal dictionary meanings in describing his invention, the use of "verbal license" often augments the difficulty of understanding the claims. Fromsom v. Advance Offset Plate, Inc., 720 F.2d 1565, 1569 (Fed.Cir.1983). Reference to "[t]he specification aids in ascertaining the scope and meaning of the language employed in the claims inasmuch as the words must be used in the same way in both the claims and the specification." Autogiro Co. of America v. United States, 384 F.2d 391, 181 Ct.Cl. 55, 155 USPQ 697 (1967). "The use of the specification as a concordance for the claims is accepted by almost every court, and is a basic concept of patent law." Id. Due to this ability of the inventor to define his own *1387 terms, the specification and claims must be read as they would be read by one of ordinary skill in the art at the time of the invention.[6]American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.) cert. denied, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41, 224 USPQ 520 (1984).
Rodime forwards two arguments in support of its claim that the ordinary meaning of the contested phrase "tracks per inch" has been altered in the pendent language. First, Rodime indicates that two references to "tpi" are made in the specification. In the first reference, Rodime cites an objective of the invention as providing storage density of "approximately 600 tracks per inch." Col. 3, lines 1-3 (emphasis added). The second reference is provided in a table summary which lists "tracks per inch" as "600." Col. 7, lines 1-43. There is no indication whether the table reference is to an average or an absolute value, and both of the references are made without explanation or elaboration. Rodime argues that the use of "approximately" in the specification should be given special significance when that word was later amended into the claim.
While the specification and claims are to be read together, sometimes the wording used in the specification is different than the wording used in the claim. The Federal Circuit has held that the amendment of a claim during reexamination to include words already in the specification does not amount to a substantive change in the patent. Tennant Co. v. Hako Minuteman Inc., 878 F.2d at 1417, 11 USPQ2d at 1306-07. In Tennant, the inventor amended the claim during reexamination. As originally granted, the claim read "... a movable first wall section,...." Id. 878 F.2d at 1417. After being amended, the claim read "... a movable first bottom wall section,...." Id. The court, in determining that the amendment made no substantive change, cited several references to a "movable bottom wall" in the specification. Id. Thus, "common sense" dictated that the claim should be read so that the "movable first wall section" was the "movable bottom wall." Id. As interpreted, the amendment made during reexamination was allowable because it was obvious and did not substantively change the claim. Id.
Such a situation does not exist here. In Tennant, the court noted that the amendment made the claim more definite by indicating that the "first wall section" was the "first bottom wall section." 878 F.2d at 1417. Here, Rodime amended the claims to include the word "approximately" as a modifier of "600 tpi" which does not make the claims more definite. Rather than limiting the scope of the patent, as in Tennant, the amendment by adding "approximately" broadens the scope by incorporating an indefinite term. This expansion of the scope of the patent during reexamination is impermissible. 35 U.S.C. § 305.
Rodime's second argument is based on the assertion that one of ordinary skill in the art would understand that "600 tpi" implies a range of values. Specifically, Rodime contends that the inclusion of a single value (600) in the specification language would be recognized by one skilled in the art as "merely a recitation of a nominal value." In support of this position Rodime submits the declaration of its expert witness, Anthony N. LaPine. LaPine states that it is well established in the disk-drive community that the listed density is only a nominal value. Due to the construction of disk drives, the density varies across the disk and manufacturing tolerances exist because of these variations. It is inherently impossible to have an exact density, and because of this inherent inexactness, it is an industry custom to regard the density listed as only an approximation and nothing more. LaPine Declaration, ¶ 9-18, 22.
Based upon LaPine's understanding of "tracks per inch" in the computer industry, Rodime argues that its addition of "approximately" during the reexamination did not broaden the claims, but merely served to clarify what was already self-evident to one of ordinary skill in the art. LaPine Declaration, ¶ 14.
While LaPine's declaration is informative as to the understanding in the computer *1388 industry, it is insufficient to show that a genuine issue as to material fact exists. LaPine never states that he, as a person of ordinary skill in the art would interpret the value used by Rodime, "600 tpi," as encompassing the actual invention. Instead, his declaration merely states the general basis of understanding by those skilled in the art, that cited values for "tracks per inch" are inherent approximations.
In addition, neither the opinion of LaPine nor Rodime's other evidence ever establishes that a nominal value may be used to describe a range when that nominal value is, itself, not within the range. Based upon these inadequacies, Rodime fails to establish that one of ordinary skill in the art would interpret the phrase in a manner inconsistent with its ordinary meaning.
Review of the specification fails to support Rodime's claim that the words used in the challenged phrase have alternative meanings. The movement of the word "approximately" from the specification to the claim did not provide any self-evident clarification. Similarly insufficient was the evidence provided to show that one of ordinary skill in the art would use the contested words with a different meaning such that they should not be given their ordinary accustomed meanings. Thus, the court viewing the evidence in the light most favorable to the nonmoving party, finds that a reasonable jury could not find that the amended claims were not improperly broadened by the addition of the word "approximately."

C. Prosecution History
The prosecution history[7] is always relevant to proper claim interpretation. SSIH Equipment, 718 F.2d at 376, 218 USPQ at 688. "The prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during the prosecution in order to obtain claim allowance." Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985).
During the original prosecution of the '383 patent, the Patent and Trademark Office examiner rejected the submitted claims as being obvious over prior art. The cited prior art disclosed disk storage densities of "approximately 600 tracks per inch." The examiner posited that since such results already could be achieved on the 3.5" disk, no patentable invention existed. Office Action, May 7, 1986. Rodime responded by canceling the original claims and inserting several new claims. The new claims listed densities of "at least 600 concentric tracks per inch." Amendment, May 23, 1986. No explanation was provided for this change of language from "approximately" to "at least," and the patent ultimately issued.
During the reexamination proceeding, the examiner again rejected the claims based on prior art describing disk densities of "at least 600 tpi." Office Action, April 19, 1988. The examiner stated that by applying the 5.25" technology to 3.5" drive systems, the track per inch densities described in the prior art would have been obvious to one of ordinary skill in the art. Id. Rodime responded by amending the claims to include "approximately" and attempted to distinguish its invention from the prior art.[8]
*1389 Review of the prosecution history reveals that, in attempting to distinguish the invention from the prior art, Rodime changed the language of its claims several times. When the claim was finally allowed it read "... at least approximately 600 concentric tracks per inch...." At no point during the prosecution history, prior to the reexamination amendment, is the entire phrase "at least approximately 600 tpi" found. In fact, throughout the prosecution, Rodime continually changed the words modifying the achieved density. As it now exists, the phrase consists of three words that were the basis of several previous rejections.
These progressive changes distinguish Rodime's amended claims from the claim at issue in Tennant. In Tennant, the court noted numerous references to the "movable bottom wall" in the specification. These prior references indicated that the addition of "bottom," made by amendment during reexamination, only clarified what was already self evident. In this case, the entire phrase "at least approximately 600 concentric tracks per inch" is never seen in the prosecution history prior to the reexamination amendment. Rodime cannot point to any preexisting uses of the entire phrase to demonstrate that the amendment merely clarified and did not broaden the claim. In fact, the opposite is shown. Therefore, the prosecution history shows that amendments made during the original prosecution disclaimed certain words in an attempt to gain issuance of the patent and the subsequent reexamination amendment reincorporated those words. The reincorporation has the effect of improperly broadening the claim.

CONCLUSION
In this motion, Quantum Corporation moves for partial summary judgment claiming that the Rodime '383 patent is invalid, unenforceable, and not infringed. The dispute arises from Rodime's addition of the word "approximately" to several of the claims during reexamination so that the claims, as issued, read "... at least approximately 600 concentric tracks per inch...." Inclusion of the word "approximately" during reexamination broadens the claims in violation of 35 U.S.C. § 305. Based upon a review of the actual claim language, the specification in the patent, and the prosecution history of the patent: (1) the court finds that the addition of the word "approximately" during reexamination impermissibly broadened the scope of the claim; (2) no genuine issue of material fact exists that would allow a reasonable jury to conclude otherwise. Therefore, Quantum's motion should be granted.
Accordingly, IT IS HEREBY ORDERED that plaintiff Quantum Corporation's motion for partial summary judgment as to the invalidity of claims 4, 6, 7, 9, 14, and 19-27 is granted.
NOTES
[1] The patent as issued consisted of specifications and claims. The term "specification" refers to the written description of the invention in the patent application as filed with the Patent and Trademark Office. 35 U.S.C. § 112. The "claim" portion particularly points out and distinctly claims the subject matter which the applicant regards as his invention. 35 U.S.C. § 112.
[2] Hard-disk drives are distinguishable from floppy-disk drives in that they are permanently fixed within the computer itself. They are capable of storing large volumes of data and are a standard in modern computer systems. Due to the requirements of portable computers, the standard hard-drive of the time was not practical.
[3] The statute reads in relevant part as follows:

In any reexamination proceeding under this chapter, the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, in order to distinguish the invention as claimed from the prior art cited under the provisions of section 301 of this title, or in response to a decision adverse to the patentability of a claim of a patent. No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter. 35 U.S.C. § 305.
[4] In analyzing the validity of any patent, there is a statutory presumption of validity that accompanies issuance. 35 U.S.C. § 282; Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1 USPQ2d 1593 (Fed.Cir.1987). The presumption has no independent evidentiary significance, however, as it merely serves to allocate to the party claiming invalidity the burden of proving it. American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1360, 220 USPQ 763, 771 (Fed.Cir.) cert. denied, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41, 224 USPQ 520 (1984).
[5] The Patent and Trademark Office spelled the named inventor's name "McGinlay" on the patent application. The parties memoranda spell his name "McGinley". While the court is unsure which spelling is correct, it will defer to counsel.
[6] The specification must convey clearly to those skilled in the art the information that the applicant has invented the specific subject matter later claimed. Chisum on Patents, § 7.04 (1993).
[7] The prosecution history consists of all the correspondence, filings and actions taken by the patent examiner and the applicant from the time of the initial filing of the application until the ultimate determination regarding the patent.
[8] Specifically, Rodime noted that the prior art descriptions cited by the examiner all related to 5.25" systems. When applied to the new 3.5" technology, the old art would only provide densities of 350 and 515 tpi. Amendment, June 20, 1988, at 34-35. Rodime further argued that the prior art cited by the examiner could not have achieved a density of 600 tracks per inch. Id. at 41-42. Rodime based these statements on several assertions. First, Rodime stated that the current technology would have to be shrunk by a factor of 0.7 and, at that time, equipment of that size did not exist. Id. at 28-32. A second problem centered around the relationship between the functioning of the smaller components and the effect that temperature changes would have on the components based upon coefficients of expansion in aluminum and steel. Id. at 31. Finally, Rodime argued that the use of a linear actuator, taught by the prior art, was not practicable at the 3.5" size. Based upon these shortcomings of the prior art, Rodime claimed to have developed the rotary actuator to accomplish high track densities on the smaller scale. Office Action, September 2, 1988.